**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Meinershagen,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-20-01835-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Julie Meinershagen's Application for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 26, "Pl.'s Br."), Defendant SSA Commissioner's Response Brief (Doc. 27, "Def.'s Br."), and Plaintiff's Reply Brief (Doc. 28, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 25, R.) and now affirms the Administrative Law Judge's decision (R. at 8–36) as upheld by the Appeals Council (R. at 1–5.)

**I.   BACKGROUND**

Plaintiff filed her application for Disability Insurance Benefits on April 4, 2013, for a period of disability beginning on October 1, 2011. (R. at 164.) The application was denied on August 13, 2013. (R. at 177.) On April 29, 2014, Plaintiff filed another application for Title II and Title XVI disability benefits for a period of disability beginning October 1,

2011. (R. at 181.) On December 5, 2016, Plaintiff first appeared before Administrative Law Judge ("ALJ") Earl Cates. (R. at 137.) ALJ Cates issued a total of three decisions between January 2017 and February 2019. Initially, ALJ Cates found Plaintiff disabled. (R. at 251-58.) However, this decision was vacated due to an error in Plaintiff's date last insured. (R. at 259.) Plaintiff amended her onset date to December 5, 2015 (R. at 251), and in his second decision ALJ Cates found her fully disabled as of that date (R. at 263–71). The Appeals Council remanded this decision on February 2, 2018. (R. at 279.) ALJ Cates's third decision, issued February 20, 2019, found Plaintiff not disabled. (R. at 283.) On May 24, 2019, the Appeals Council issued another remand for a new hearing. (R. at 309.) Plaintiff appeared before ALJ Kelly Walls on September 13, 2019 (R. at 10), who subsequently issued a partially favorable decision with an onset date of February 1, 2018. (R. at 19.) The Appeals Council then denied Plaintiff's Request for Review of the ALJ's decision on August 20, 2020. (R. at 1.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, ALJ Walls determined that Plaintiff had the severe impairments of lumbar and thoracic spondylosis, fibromyalgia, osteoarthritis of the bilateral knees, status post total knee arthroscopy, degenerative joint disease of the bilateral hips, and obesity. (R. at 14.) ALJ Walls also determined that Plaintiff had the following non-severe impairments: hepatic steatosis, hiatal hernia, hyperlipidemia, chronic obstructive pulmonary diseases, obstructive sleep apnea, venous insufficiency of the bilateral lower extremities, status post ablation, panic disorder without agoraphobia, dysthymic disorder, and unspecified depressive disorder without anxious stress. (R. at 14.)

After reviewing the medical evidence and testimony, ALJ Walls concluded that Plaintiff was disabled as of February 1, 2018. (R. at 16.) Specifically, ALJ Walls determined that prior to February 1, 2018, Plaintiff had the "residual functional capacity ('RFC') to perform sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and

416.967(a). (R. at 16.) Thus, the ALJ concluded that prior to February 1, 2018, Plaintiff could perform her past relevant work as an accounting clerk, noting that this work "did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. at 19.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed

in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff's sole argument before the Court is that the ALJ erred in her analysis of Plaintiff's symptom testimony. (Pl.'s Br. at 10; Def's Br. at 5.) ALJ Walls determined that Plaintiff's symptom testimony was not fully supported by the record. (R. at 18.)

In evaluating a claimant's pain and symptom testimony, the ALJ must engage in a two-step analysis. First, she must determine whether the claimant has produced objective medical evidence of an underlying impairment. Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting pain and symptom testimony associated with the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, because the ALJ found underlying impairments of "lumbar and thoracic spondylosis, fibromyalgia, osteoarthritis of the bilateral knees, degenerative joint disease of the bilateral hips, and obesity" (R. at 18) and cited no evidence of malingering, she must provide specific, clear, and convincing reasons to reject Plaintiff's pain and symptom testimony.

"An ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). General findings pertaining to a claimant's credibility, however, are not sufficient. *See Lester v. Chater*, 81 F.3d 821 (9th Cir. 2005). Rather, "the ALJ must specifically identify the testimony she

or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis, but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Moreover, if the ALJ explains her decision "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this rule to the social security context). The ALJ may consider "[the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff argues that the ALJ erred by failing to specifically identify the reasons for rejecting Plaintiff's symptom testimony prior to February 2018. (Pl.'s Br. at 12.) Defendant, on the other hand, contends that the ALJ's RFC finding reflected Plaintiff's restricted physical functioning, and considered her subjective testimony as well as the medical opinion evidence in the record. (Def.'s Br. at 6.)

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to February 1, 2018." (R. at 18.) To support this conclusion, the ALJ made numerous references to specific evidence in the record, including objective medical evidence, Plaintiff's activities, and statements made by Plaintiff.

The ALJ cited to imaging findings in the medical record, which reflect degeneration of the bilateral knees, lumbar spine, and bilateral hips. (R. at 18, citing 955-79, 1014-37, 1083-1159, 1611-33, 1634-81, 1713-34, 1829-55, 1928-32.) However, the ALJ also noted that clinical examinations found that Plaintiff's "motor strength and sensation were grossly

normal." (R. at 18, citing 1048-78, 1161-68, 1189-1297, 1298-1310, 1351-85, 1386-1410, 1424-81, 1507-17, 1611-33, 1735-86, 1820-27, 1839-55, 1882-92.) The ALJ also cited clinical records demonstrating that at an April 2017 visit, Plaintiff told her doctor that "[s]he has not had any issues" with her knees "until the last couple of months." (R. at 20, citing 1552.) The ALJ thoughtfully assessed medical opinion evidence as well, including that of Monte Jones, M.D., who examined Plaintiff on November 10, 2014. (R. at 17, citing1165-67.) Dr. Jones found that Plaintiff was limited to standing and/or walking for four hours of an eight-hour workday, with occasional kneeling, crouching, climbing of ramps or stairs, and lifting. (R. at 17, citing 1165-67.) In addition to Dr. Jones's medical opinion, the ALJ considered the opinions of three other physicians, all of whom concluded that Plaintiff was capable of work activity. (R. at 17, citing 173-75, 188-90, 219-221.)

Plaintiff asserts that the ALJ rejected her symptom testimony due to her normal motor strength and alleges that the ALJ's analysis is deficient because the ALJ failed to point to anything in the medical record to support a finding that Plaintiff should have exhibited decreased motor strength due to her conditions. (Pl.'s Br. at 12.) Plaintiff is correct that subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by medical evidence. (Pl.'s Br. at 12, citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).) However, an ALJ may rely on objective findings and physician opinions to discredit a claimant's testimony regarding functional limitations. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Here, based on the ALJ's review of the Record and medical opinion evidence, which she cited in her decision and the Court references above, the ALJ reasonably concluded that Plaintiff's testimony regarding her back and knee pain was not adequately supported prior to February 1, 2018. *See, e.g.*, *Lee v. Comm'r of Soc. Sec.*, No. CV-20-01430-PHX-DJH, 2022 WL 669752 (D. Ariz. Mar. 7, 2022) (holding that the ALJ amply cited to medical documentation in the record, which served as a reasonable basis for his finding that the plaintiff had a greater degree of functioning than was alleged).

The ALJ also observed that Plaintiff's activity levels do not support her allegations of disabling symptoms for the entire relevant period. (R. at 18.) Specifically, the ALJ noted that while Plaintiff reported limited daily activities, she was able to "independently perform personal care activities, drive a car, shop in stores, prepare simple meals, and perform light household chores." (R. at 18.) Plaintiff posits that the fact that she was able to carry on with certain daily activities does not detract from her credibility as to her overall disability. (Pl.'s Br. at 13, citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).) Plaintiff also argues that the ALJ "fails to identify any specific testimony that these activities conflict with."[1] (Pl.'s Br. at 17.)

Again, the Court finds that the ALJ amply cited to the record in reaching this conclusion. Further, the Ninth Circuit has affirmed courts in reaching similar conclusions. For example, in *Molina v. Astrue*, the Ninth Circuit held that even where activities "suggest some difficulty functioning, they may be grounds for discrediting [a plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." 674 F.3d 1104, 1113 (9th Cir. 2012); *see also Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir.1990) (holding that a plaintiff's testimony about daily activities, including taking care of personal needs, preparing easy meals, doing light housework, and shopping for groceries, may be seen as inconsistent with the presence of a disabling condition).

Finally, Plaintiff argues that the ALJ erred in determining that Plaintiff began using a walker full time in February 2018, despite her testimony that she used a walker continuously from 2013 through present. (Pl.'s Br. at 13; R. at 20.) In making this determination, the ALJ cited to portions of the record that clearly contradict Plaintiff's claims. The ALJ observed that in October 2013, Plaintiff was described as needing a walker for "long distances." (R. at 20, 1060.) Plaintiff takes issue with the fact that the ALJ did not explain the definition of "long," but under the applicable standard, the ALJ was not required to do so because the ALJ's logic can be easily discerned. (Pl.'s Br. at 13). *See*

---

[1] The Court notes that the ALJ did not entirely discredit Plaintiff's symptom testimony—the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found the symptom testimony was not fully supported until February 1, 2018. (R. at 18.)

*generally Brown-Hunter*, 806 F.3d at 492. Other portions of the record reinforce the ALJ's analysis—in November 2014, during her visit with Dr. Jones, Plaintiff performed mobility testing without the use of the walker, and he noted that her "gait was safe and stable without the use of the assistive device." (R. at 20, 1162-63.) The ALJ also noted that in July 2016, Plaintiff was prescribed a walker specifically for use at night. (R. at 20, 1453.) Plaintiff did arrive to an April 2017 appointment with a walker (R. at 1554, 1854), but she did not use a walker at appointments in September and November 2017, and notes from both appointments state that she walked with a normal gait. (R. at 20, 1751, 1761.) However, from February 2018 on, the ALJ noted that Plaintiff consistently arrived at her appointments with a walker, which supports "deterioration of her conditions and worsening of her symptoms and is consistent with ineffective ambulation." (R. at 20, citing 1831, 1837, 1842, 1844, 1862-63, 1882-83, 1908, 1913, 1918-19, 1923.) The Court finds that the ALJ amply cited to the Record in her analysis of Plaintiff's walker usage, which served as a reasonable basis for her finding that Plaintiff had a greater degree of ambulatory ability than alleged prior to February 1, 2018. *See Quesada v. Colvin*, 525 F. App'x 627, 630 (9th Cir. 2013).

      The Court finds that the evidence cited by the ALJ throughout her decision undermines the statements made by Plaintiff. Though the ALJ did not always directly link each piece of cited evidence to a particular statement made by Plaintiff, the ALJ has nonetheless cited sufficient evidence in the record and statements by Plaintiff to enable this Court to reasonably discern her path and meaningfully determine that her conclusions are indeed supported by substantial evidence. Thus, the Court finds the above reasons sufficiently specific, clear, and convincing and supported by substantial evidence in the record.

      Plaintiff also asks the Court to remand this case for payment of benefits or a new hearing. (Pl's Br. at 14.) Because the Court finds that the ALJ did not err in her evaluation of Plaintiff's symptom testimony, the Court does not reach this argument.

**IT IS THEREFORE ORDERED** affirming the December 23, 2019 decision of the Administrative Law Judge (R. at 8–36), as upheld by the Appeals Council on August 20, 2020 (R. at 1–5).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 22nd day of April, 2022.

Honorable John J. Tuchi
United States District Judge